JOHN WRIGHT, receiver of the Ott & Brewer Company,

*v.*

THE FIRST NATIONAL BANK et al.

1. Under the statutes respecting corporations in this state, a director of a corporation ceases to be a director on making an assignment of his estate for the benefit of his creditors, and until it is shown that his creditors have been satisfied and some of his stock remains undisposed of, the presumption that he is no longer a *bona fide* stockholder will prevail.

2. No person can be elected a director who is not a *bona fide* holder of some of the stock at the time of such election, and he ceases to be a director when he has disposed of his stock.

3. Though such a director had not made an assignment, but had nevertheless become bankrupt and immediately fled from the state, the like result would follow, that he ceased to be a director by removing himself from the state.

4. If a board be constituted of three members and one of them ceases to be a director for any reason whatever, there is no longer such a board of directors as the statute contemplates, and cannot be until the provisions of the act for such emergency are complied with, that is, the election of a new director by the remaining members of the board.

5. From the facts that all the mortgagees lived in the same city in which the corporation mortgagor did business, and several months before the execution of the mortgage one of the three directors made an assignment for the benefit of creditors and fled the state, his assignment having been placed on record, the mortgagees were chargeable with knowledge that such person had ceased to be a director, and that consequently there was no board authorized to execute the mortgage.

On final hearing on pleadings and proofs.

*Mr. James Buchanan,* for the receiver.

*Mr. Woodbury D. Holt* and *Mr. William M. Lanning,* for the First National Bank.

*Mr. Garret D. W. Vroom* and *Mr. Edwin Robert Walker,* for the defendants Kuser.

BIRD, V. C.

The Ott & Brewer Company was engaged in the business of manufacturing pottery. In the month of June, 1891, it was managed by three directors. In that month one of those directors, Thomas A. Bell, made an assignment for the benefit of his creditors, and almost immediately left the state, and his whereabouts since then have never been ascertained by any of the residents in and about Trenton with whom he had business relations. These facts are admitted on all sides in this case. The deed of assignment was recorded according to the statute on the 6th day of July, 1891. In the month of November, the company, by a resolution passed by the two remaining directors, executed a mortgage to one of the defendants in this cause, the First National Bank of Trenton, for the sum of $7,600. That mortgage was recorded on the 27th of November. On the 30th day of August, 1892, the company executed three several chattel mortgages to three of the defendants, which mortgages were duly recorded according to law. Subsequent to all these transactions, a bill was filed for the purpose of declaring the company insolvent and having a receiver appointed. Such proceedings were taken as led to the appointment of the complainant in this cause as receiver.

The receiver files this bill for the purpose of determining the rights of the general creditors and these alleged lienholders with respect to such liens.

The facts above outlined are set forth in his bill. It is alleged that the said mortgages are invalid and not binding as to general creditors—*first*, because there were but two directors at the time of the execution of said mortgages, and consequently no board of directors, either *de jure* or *de facto ;* and *second,* because the mortgagees are not *bona fide* holders for value without notice. The sixteenth section of the act respecting corporations (*Rev. p. 180*) declares that the business of every such corporation " shall be managed and conducted by the directors thereof, who shall respectively be shareholders therein." This section declares that every director shall be a shareholder. The forty-seventh section declares— .

"It shall not be lawful for any person to be elected a director of any body corporate in this state, issuing stock, unless that person shall be at the time of his election a *bona fide* holder of some of the stock thereof."

Clearly, the legislature intended to guard against every pretence or mere color and all deceit.

The seventeenth section declares—

"The directors shall not be less than three in number, and they shall be chosen annually by the stockholders at such time and place as shall be provided by the by-laws of the company, and shall hold their office for one year and until others are chosen and qualified in their stead."

The twentieth section declares—

"When any vacancy occurs among the directors or secretary or treasurer by death, resignation, removal or otherwise, it shall be filled for the remainder of the year in such manner as may be provided for by the by-laws of the said company."

The forty-eighth section declares—

"When any person, a director of any body corporate, shall cease to be a *bona fide* holder of some of the stock thereof, he shall cease thereupon to be a director thereof."

The forty-ninth section provides for the filing of a list of the directors and all other officers with the secretary of state.

With these explicit requirements of the statute respecting the organization and management of corporations, what must the judgment be upon the first proposition, which is that, at the time of the execution of these mortgages, there was no board of directors or other authority to execute them? This leads to the inquiry whether or not Bell, in any sense, could be regarded as a director after the assignment referred to of all of his estate, real and personal, for the benefit of his creditors. It is urged that he was, *de facto* if not *de jure.* This is put upon the ground that his name appeared upon the books of the company as owner of certain stock. But this seems to me to be most fallacious. It will be seen that the forty-seventh section declares that no per-

son shall be elected a director who is not a *bona fide* holder of some of the stock at the time of such election. The sixteenth section declares that the business of the corporation shall be managed by a board of directors, who shall be shareholders therein. Reading these two provisions together, I think no one will insist that they will be complied with in the remotest degree in case that the next day after the person should be elected he should dispose of all his stock, especially when the forty-eighth section is read, which declares that in such case he shall cease to be a director. The assignment of Bell being established, he ceased to be a *bona fide* holder of stock. He parted with all his interest in such stock for the benefit of his creditors, and until it is shown that his creditors have been satisfied and this stock, or some of it, remains undisposed of, the presumption that he is no longer a *bona fide* stockholder will prevail. Such a case is radically different from the one where stock is hypothecated to secure a loan or other like indemnity.

But besides the certain result just established, the like must follow from the fact that Bell immediately fled from the state. To insist upon it that he continued to be a director after this act would be a most flagrant perversion of every principle of the law. Besides, the twentieth section anticipates this condition and provides that—

"When any vacancy shall occur by death, resignation, removal or otherwise it shall be filled for the remainder of the year as may be provided for by the by-laws of the said company."

I think the provisions of the law are so broad as to fully comprehend this case and to exclude Bell from the directorship *de facto* as well as *de jure*. To say that when a stockholder and director has gone into bankruptcy and voluntarily made an assignment of all his interests and fled the state, he can be regarded as a *bona fide* shareholder and director, would be extremely inconsistent and open the way for innumerable frauds. In some respects at least, as Mr. Justice Depue shows in the case to which reference will hereafter be made, the law requires and deals with actualities, not with shadows, with facts and not

with fiction. And it often happens that this principle may be invoked by one class of creditors against another when the debtor would not be heard as against the latter.

Therefore, Bell not being a director, and the statute expressly requiring three, can the two remaining directors execute a mortgage upon lands or goods and chattels which will give the holders thereof priority as to the things mortgaged over the claims of general creditors? It will be seen that the question is not whether or not the company itself is estopped from setting up the illegality or voidable nature of the act, but whether general creditors are estopped from so doing. They have a right to rely upon the provisions of the act. It is their only protection. The general creditors have a right to rely upon the statute which requires three directors, who are *bona fide* stockholders, to manage the affairs of the company for their benefit. They are entitled to the advice, skill and judgment of three. The statute has assured them of this safeguard. The statute declares that every such corporation shall be managed by a board of directors consisting of not less than three *bona fide* shareholders. Would it be at all reasonable or just for the court to say, in the face of the statute, that a board may consist of two directors only? There is no authority for such an assumption of power. If a board be constituted of three, and one of them ceases to be a director for any reason whatever, there is no longer such a board of directors as the statute contemplates, and cannot be until the provisions of the act for such emergency are complied with, that is, the election of a new director by the remaining members of the board. This the twentieth section of the statute provides for. This certainly would be the result in case of the death or resignation of one of three members of the board. I presume this will not be disputed by any one. The insistment that in such case the company could transact no business whatsoever does not by any means follow. The ordinary internal affairs of such corporation, under such circumstances, would be carried on by necessity as well as by fair implication. Such necessity would be of brief duration, for the statute provides that the remaining members of the board may elect a new director.

To say that in case of death or removal, or where one director, in any event, ceases to be such, that there is still a *de facto* board which may perform all of the duties devolving upon a board of directors, whether it pertain to the indoor or outdoor management of the corporation, is equivalent to saying that one individual stockholder could properly act as a director and be regarded by the outside world as being a *de facto* corporation. Under such circumstances it seems to me that it will not do for the courts to allow the continuing members of a board to despise or set at naught the solemn provisions of the law which were enacted for the protection of the public against fraud and wrongdoing.

I think this case is clearly within the exceptions so fully considered by Mr. Justice Depue, in the case of *Hackensack Water Co. v. De Kay, 9 Stew. Eq. 548*, with respect to the rights and obligations of those dealing with such corporation in matters pertaining to the internal or external affairs of the corporation. With respect to the latter, he says (*at p. 568*): "In all the external circumstances, competent legislative authority, an organization *de facto*, directors and officers *de facto*, the corporate seal affixed with the secretary's oath that it was legally affixed, the transaction was proved legal. These are matters which persons dealing in corporate securities are bound to take notice of. The imperfections arose from the omission of acts which the directors should have done in the management of the private business of the company. Those are the matters with respect to which third persons are not obliged to be informed. Finding the power to make the mortgage in the charter, and that the power might be made complete on certain conditions to be performed by the corporation in the management of its internal affairs, third persons would be justified in assuming that such conditions had. been complied with, and that everything had been done by the corporation, or its directors, which was necessary to validate the securities before they were put in circulation. As against a *bona fide* holder, who has taken it upon the faith that the security is what it appears to be, a corporation cannot defend on the ground of such omission on its part or by its directors."

In that case the court distinctly held that it was incumbent upon those dealing with pretended corporations to know that there was a *de facto* corporation and a *de facto* board of directors. Certainly there must be such number acting, or who are apparently clothed with authority to act, in order to constitute even a *de facto* board. So much with respect to the general fundamental principles in the interpretation and application of statutory provisions to the case in hand.

Nor have I been able to find any authority, after the most careful and extensive research, which in any wise questions the conclusions to which I have been led. But my investigations have guided me to authorities directly in point which very fully support the views above expressed. The first to which I would refer is that of *Coryell et al., Exrs. of Holcomb,* v. *The President and Managers of New Hope and Delaware Bridge Co., 1 Stock. 457,* in which the chancellor announced the following doctrine : " Where the charter of a company required five managers to constitute a quorum, and there were but four present when a resolution was passed authorizing the execution of a mortgage, the mortgage is null and void, from the fact that it never received the sanction of the board of directors." In *Kupfer* v. *South Parish of Augusta, 12 Mass. 185,* the court said : " Where a parish appointed a committee of three to build a meeting-house, a contract made by one of the number was not binding on the parish." In this case materials were furnished and the parish had the benefit of them. In the case of *Beatty* v. *The Marine Ins. Co., 2 Johns. 109, 110,* it was held that, " Where the act incorporating an insurance company provides that no losses shall be settled or paid without the approbation of at least four of the directors, with the president or two assistants, or a plurality of them, the acceptance of an abandonment by the assured for a total loss will not be valid or binding on the company unless it appear to have been done at a board of directors constituted according to the act, and by a majority of them present. A body corporate can only act in the mode prescribed by the law creating such corporation."

But if it should be considered in such cases that persons entering into contracts, *bona fide* and for a valuable consideration, with one or two individuals claiming to be a board of directors, then a further question arises upon the facts before me, whether or not these conveyances were taken *bona fide* and without notice. I think that the holders of them are clearly chargeable with notice of the situation. The facts very fully sustain this view. All of the parties interested lived in Trenton and in the same immediate vicinity. The records of the mortgages and of the other instruments, as well as the admissions of counsel upon the argument, all sustain this view. Bell made an assignment in June, 1891. The assignment was recorded on the 6th day of July following. About the same time the inventory of the assignee and the three appraisers was filed in the surrogate's office. As stated above, Bell, immediately after making this assignment, fled from the state, and has never been heard of since by anyone who is interested in the defendant company. The mortgage of the bank was dated more than four months afterwards, and was not recorded until about five months after the assignment. The chattel mortgages were made and delivered about fourteen months after the assignment. When the public nature of such an assignment is considered—the recording of the assignment in the surrogate's office and in the clerk's office, both offices for the keeping of public records, and the advertisements and notices required to be given by the assignee and the numerous creditors interested—and the nature of the interests of the mortgagee taken into the account, together with the vigilance which ordinarily prudent men, under such circumstances, give to their own private affairs, it is impossible to believe that they did not know that Bell had ceased to be a director, and consequently that there was no board of directors. The presumption is so strong that it must stand against them until they overcome it by direct proof.

It was urged upon the argument that notwithstanding the assignment, Bell still had some interest in the things assigned; that is, that after the payment of the debts, if any of his estate remains, such estate was his, and that because of this fact he

might be considered to have sufficient interest to enable him to be a director. When his own statements in the assignment, together with the inventory, come to be considered, saying nothing about his · flight, it becomes manifest that the most fertile imagination would not expect the smallest equity to his own profit resulting from the legal process which he had inaugurated.

Coming to the conclusion that the mortgages cannot be sustained, it is unnecessary for me to determine the question which was debated with respect to the priority of the one over the other as against the goods and chattels.